DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KIMBERLY HOPKINS (MABN 668608)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Kimberly.hopkins@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHN C. FRY,<br><br>    Defendant. | NO. CR 19-0102 EMC<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing: January 15, 2019<br>Time: 2:30 p.m.<br>Court: Hon. Edward M. Chen |

    The United States of America requests that defendant John Fry be sentenced to three months imprisonment, three years supervised release, a $10,000 fine, and a $100 special assessment.

**INTRODUCTION**

    On February 28, 2019, the defendant was charged by Indictment with violations of 31 U.S.C. § 5322 – Unauthorized Disclosure of Suspicious Activity Reports ("SARS") (Count 1); 18 U.S.C. § 1030(a)(2) – Misuse of a Computer (Counts 2 and 3); and 18 U.S.C. § 408(a)(8) – Use of a Social Security Number (Count 4). On August 14, 2019, the defendant pled guilty to Count 1. The United States agrees with the Guidelines calculations set forth in the Presentence Investigation Report ("PSR"). However, based on the nature and circumstances of the crime, and the goals of sentencing, the government believes a sentence of three months – in the middle of the applicable guideline range – is

necessary and appropriate in this case.

## DISCUSSION

### I.     The Offense Conduct

The PSR provides a detailed account of the offense conduct and the history and characteristics of the defendant.  The government, however, does not agree with the inclusion of Fry's self-serving and unsupported statements in the offense conduct section.[1]  While the court need not precisely resolve the factual dispute of the statements for purposes of sentencing, the government will address its objections below and at the sentencing hearing.  Accordingly, two items bear emphasis at this state of the proceedings.

First, Fry's offense conduct is not only serious, but it undermines the very foundation of our financial system.  As an Investigative Analyst for the IRS, Fry had access to various law enforcement databases, including the Financial Crimes Enforcement Network ("FinCEN") and Palantir.  Fry was entrusted with highly sensitive and confidential information, and under the Bank Secrecy Act, was prohibited from disclosing a SAR or any information that would reveal the existence of a SAR, except as necessary to fulfill official duties.  Since 2008, FRY has completed a yearly UNAX Awareness briefing regarding the statutory rules and the IRS's policy on unauthorized access and inspection of taxpayer records and Bank Secrecy Act data.  Additionally, every SAR that Fry downloaded contained a warning notice on the front emphasizing the sensitive nature of the information and the prohibitions of unauthorized disclosure.  Despite repeated trainings, warnings, and clearly established IRS rules and regulations, Fry willfully abused his position of trust and intentionally sought out SAR information related to Michael Cohen.

While Fry admits to the unauthorized disclosure of the Cohen related SARs, he attempts to downplay how he came into possession of the SAR information.  Fry claimed that in the course of his duties, SAR reports related to Cohen and Essential Consultants appeared in his monthly download.  He claimed the SARs contained suspicious activity and referenced two earlier filed SARs.  Fry also claimed

---

[1] On December 3, 2019, defense counsel emailed the probation officer a lengthy list of corrections and additions to the draft PSR, and failed to provide the government with a copy.  The probation officer incorporated the changes into the final PSR.  The government first became aware of the corrections and additions when reviewing the final PSR.

he became alarmed when he was unable to locate the two earlier filed SARs in the FinCEN database. There is no evidence in the record to support or corroborate Fry's theory of how he came into possession of the Cohen related SARs. However, there is evidence from Fry's supervisor stating that Fry had no official reason in his capacity as an Investigative Analyst in San Francisco to view SAR records from other geographic regions, such as New York, or SAR records related to Cohen or Essential Consultants. Moreover, agents conducted a thorough search of Fry's work computer and found no record of the Cohen related SAR reports in his monthly download. Because Fry claimed that the SAR reports were located on a specific folder on his work computer, the government agreed to meet with Fry (and his attorney), and allowed Fry to go through his work computer to find the reports. Unsurprisingly, Fry was unable to locate the SAR reports, because they never appeared in his download.

Second, Fry's email, phone, and work computer records are instructive in showing the chronology of Fry's egregious conduct. On the morning of May 4, 2018, Avenatti posted the following on his public Twitter page[2]:

> "There is no excuse for the refusal of the Treasury Dept. to release the Suspicious Activity Report (SAR) relating to the $130,000 payment. We are calling on @SenBlumenthal, @RepCharlieDent and others in Congress to immediately subpoena the SAR and release it to the people. #basta"

Later that same day, at approximately 2:54 p.m., Fry logged onto the Palantir database from his work computer and downloaded five SARs related to Michael Cohen and Essential Consultants. Admittedly, Fry called Avenatti twice from his personal cell phone and verbally provided information contained in the five SARs. However, email records revealed that after downloading the five SARs, Fry sent the following email to Avenatti, "Just an FYI, using Cohen's social (no business EIN's) there are 5 SAR filings." Fry then summarized information contained in one of the SARs. Avenatti immediately responded, "Pls Call me."

At 3:11 and 3:15 p.m., Fry called Avenatti from his personal cell phone, and verbally provided him with information contained in the five SARs. At 3:38 p.m., Fry logged onto the FinCEN database

---

[2] While the government has no evidence that Fry responded to the above-mentioned post, Fry's Twitter records reflect that he not only followed Avenatti on Twitter, but he often "liked" and responded to Avenatti's posts.

UNITED STATES' SENTENCING MEMORANDUM
Case No. CR 19-0102 EMC            3

from his work computer and conducted additional searches related to Michael Cohen.  Shortly thereafter, FRY emailed Avenatti and said he scoured FinCEN for additional records related to Cohen and his company Essential Consultants and that, ". . . .when I get home I will be able to send you legible screenshots of the SARs we spoke of. . . ."

After Fry emailed the screenshots of the SARs, Avenatti emailed Fry about two SARs that appeared to be missing,

> "John: I cannot begin to tell you how much I appreciate this.  Thank you.  Please see the attached from the First Republic SAR you sent.  It is the third of three that had been filed as of that date according to the text [sic] Can you use the attached info to get the other two SARS?  Also, do you think a fourth may have been filed after this one?  Again, words cannot express how much I value your assistance."

Shortly thereafter, FRY responded, "Michael, I know time is of the essence here, but our office is shutdown for the weekend.  I will check 1st thing Monday morning and let you know what I am able to find.  I appreciate your patience, John."  As promised, on Monday, May 7, 2018, FRY logged onto the FinCEN database from his work computer.  He conducted additional searches related to Cohen and Essential Consultants, and called Avenatti to provide him with information contained in the searches.

## II.     Sentencing Recommendation

The government recommends a sentence of three months custody.  Fry violated the most basic principles of lawful and ethical behavior for a public servant.  Fry, a self-described expert in his field, betrayed his position of trust by accessing SAR information without a legitimate purpose to do so, and then disclosed the existence of and the highly sensitive information contained in SARs to an individual not authorized to receive them.

Specific deterrence and general deterrence are both significant goals of sentencing.  A custodial sentence is necessary to deter the defendant from future crimes and to assist him in making the sustained choice to comply.

In addition to specific deterrence, general deterrence warrants a custodial sentence in this case. Fry was an IRS analyst and he abused his position of trust. At the time of his criminal activity, Fry's legitimate work was supporting IRS Agents in the Northern District of California area and reviewing SARs for activity that could potentially lead to a criminal investigation.  Fry, a law enforcement officer with more than 10 years of experience, and a self-described expert of SAR related matters, set aside his

training and experience, and committed crimes in violation of the law he was sworn to uphold. It is critical that people understand and believe that when a law enforcement officer is caught doing these kind of things, he will be dealt with severely by the system he was once a part of. Here, the consideration of promoting respect for the law is more important because the public is watching to see how we in the system treat our own.

A sentence of probation under these circumstances would undermine respect for the law and would not provide adequate general deterrence. All of this sets up to provide a population that will have specific knowledge of the Court's message and have both the ability and the will to absorb that message, precisely the conditions in which the notion of general deterrence applies. The message, accordingly, must be that this kind of conduct will result in a custodial sentence.

### III. Victim Impact

On September 20, 2019, October 12, 2019, and October 25, 2019, Michael Cohen's attorney sent Victim Impact Statements to the parties and the Court. Cohen claims he is owed court ordered restitution because Fry's criminal conduct caused him and his business to suffer financial harm. The government contacted Cohen's attorney to request documentation in support of his request for restitution. On December 20, 2019, the government received Cohen's submission requesting $14,083,233.30 in restitution. Upon review of Cohen's submission, the government does not believe Cohen has shown proof of financial harm.

### CONCLUSION

For the reasons set forth above, the United States recommends the Court impose three months imprisonment, three years supervised release, a fine of $10,000, and a $100 special assessment.

DATED: January 8, 2020                              Respectfully submitted,

DAVID L. ANDERSON
United States Attorney


           /s/
KIMBERLY HOPKINS
Assistant United States Attorney